IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

ANTHONY ERSKINE,
**Claimant Below, Petitioner**

**FILED**
**June 2, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-423**        (JCN: 2025003852)

**WHITECAP WASTE HOLDINGS, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Anthony Erskine appeals the September 29, 2025, order of the Workers' Compensation Board of Review ("Board").[1] Respondent Whitecap Waste Holdings, LLC, ("Whitecap") timely filed a response. Mr. Erskine did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which rejected the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Erskine submitted an Employees' and Physicians' Report of Occupational Injury or Disease dated January 26, 2025, alleging that he sustained injuries to his feet on December 24, 2024, when he slipped and fell, hit his head on a dumpster, and was knocked unconscious. The physician's portion of the form was completed by Ernest Luczkowski, DPM, who indicated that Mr. Erskine sustained a left leg and foot injury as a direct result of an occupational injury.

On December 27, 2024, Mr. Erskine was seen at the Beckley ARH Emergency Department for complaints of bilateral foot pain after a ground level slip and fall at home three days prior. Mr. Erskine reported that he also hit his head. The provider noted that Mr. Erskine had persistent pain in both feet with bruising on the medial aspect of both feet. The assessment was metatarsal stress fracture of left foot with routine healing and metatarsal stress fracture of right foot with routine healing. An x-ray of the left foot revealed no

---

[1] Mr. Erskine is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. Whitecap is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

definite evidence for acute fracture but there was evidence of varying degrees of fracture and healing of the second through fourth metatarsals. An x-ray of the right foot revealed no acute or significant abnormalities.

Prior to the alleged injury, Mr. Erskine received treatment for both of his feet between 2021 and 2024. On May 13, 2021, Mr. Erskine presented to Billy Cole, D.O., with a swollen left foot with pain and bilateral rash on his feet. The assessment was arthropathy and anti-nuclear factor positive. On May 27, 2021, Mr. Erskine reported bilateral feet swelling and rash. An additional assessment of gouty arthropathy was reported. On October 4, 2021, Mr. Erskine was seen by Sayanika Kaur, M.D., for pain and swelling of both feet. The assessment was pain and swelling of lower extremity, left; positive anti-nuclear antibody; and foot pain, bilateral.

On November 29, 2023, Dr. Cole assessed neuropathy and pain in the left foot. Mr. Erskine was seen by Douglas Dockery, DPM, on December 11, 2023, for bilateral foot pain. It was reported that the pain was present for three years and was constant. An x-ray of the right foot revealed no fractures, dislocations, gas in tissue, or soft tissue emphysema. An x-ray of the left foot revealed fractures with callus formation at metatarsals two, three, and four with malunion and questionable healing fractures. Dr. Dockery assessed metatarsalgia, right foot; displaced fracture of second metatarsal bone, left foot, subsequent encounter for fracture with malunion; displaced fracture of third metatarsal bone, left foot, subsequent encounter for fracture with malunion; and displaced fracture of the fourth metatarsal bone, left foot, subsequent encounter for fracture with malunion.

On March 6, 2024, Dr. Cole indicated that Mr. Erskine had a recent podiatry evaluation for injury of the left foot with toe injury and was currently using a walking boot. On April 29, 2024, Dr. Cole assessed a fracture of the left metatarsal bone. Mr. Erskine underwent a left foot MRI on January 5, 2024, revealing healing nondisplaced transverse fractures, proximal shafts of the second and fourth metatarsals; healing fracture midshaft third metatarsal with exuberant bridging callus formation; and tenosynovitis, fifth MTP joint. It was reported that Mr. Erskine jumped out of a truck one month prior and had severe pain and a history of gout.

On January 29, 2024, Mr. Erskine presented to Dr. Dockery with left dorsal foot pain. X-rays of the left foot revealed healing fractures of metatarsals 2, 3, and 4. The impression was displaced fracture of second metatarsal bone, left foot, subsequent encounter for fracture with malunion; displaced fracture of third metatarsal bone, left foot, subsequent encounter for fracture with malunion; and displaced fracture of the fourth metatarsal bone, left foot, subsequent encounter for fracture with malunion. Mr. Erskine was limited to sedentary work. On March 18, 2024, Dr. Dockery limited Mr. Erskine to light duty work. On May 6, 2024, Dr. Dockery limited Mr. Erskine to desk duty.

Following the injury at issue, Mr. Erskine was seen by Dr. Cole on December 30, 2024, and reported he had a recent fall while at work with injury to both feet. The assessment was pain in both feet and arthropathy.

On January 3, 2025, Mr. Erskine was seen by Ernest Luczkowski, DPM, for bilateral foot pain. Mr. Erskine reported that the pain started suddenly on December 24, 2024, after a slip and fall at work when he fell on ice and knocked himself out. Dr. Luczkowski's impression was ingrown toenail; foot pain, bilateral; ankle pain, bilateral; displaced fracture of third metatarsal bone, left foot, subsequent encounter for fracture with nonunion; displaced fracture of second metatarsal bone, left foot, subsequent encounter for fracture with nonunion; and displaced fracture of fourth metatarsal bone, left foot, subsequent encounter for fracture with nonunion. Surgery was recommended. On January 21, 2025, Mr. Erskine reported that he was having intense pain from his midfoot down into his second, third, and fourth toes, which would correlate with him refracturing that area. Dr. Luczkowski recommended a CT.

On January 24, 2025, Mr. Erskine presented to Dr. Cole for medical clearance for surgery. The assessment was pain in both feet, arthropathy, and pre-surgery evaluation. On January 31, 2025, Dr. Cole indicated that Mr. Erskine was still awaiting surgery for fractures.

Mr. Erskine was deposed on March 17, 2025, and testified that in 2023 he broke his toes on his left foot, after which he saw a podiatrist from December 1, 2023, until about June 3, 2024. He stated that he was put on light duty for seven or eight months and then went back to regular work. Mr. Erskine testified that the toes healed up and were fine. Further, Mr. Erskine testified that while he was working on December 24, 2024, he slipped on something and fell and hit his head on a dumpster. He stated that his co-worker told him he was knocked out for a few minutes and that when he fell and hit his head, his legs slapped together. Mr. Erskine testified that afterwards he had pain in both feet but more in the left foot. He said when he and his co-worker arrived at the shop, they told Jim Riley about his fall, and he asked Mr. Riley if he could get a paper stating he had fallen but was told that there wasn't anyone in the office that early in the morning.[2] Mr. Erskine testified that, when he went to the hospital, he was asked if he wanted to put it under comp, and he said, "No. I want to see how bad it is first." He said after they x-rayed his feet and told him his feet were fractured, he told them he would like to put it on comp. Mr. Erskine said he told the doctor that he was hurt at work but that he didn't want to put it on comp if it wasn't bad. Mr. Erskine was asked if he advised the medical personnel that he had bilateral foot pain after a ground level fall at home three days ago. He said, "No. I told her that it

---

[2] It's unclear from the record who Mr. Riley is and what position he holds at Whitecap.

3

happened at work and I'd slipped and busted my head on the side of a can." He said he had been unable to work since on or about January 1, 2025, because of pain in his left foot.

In an affidavit dated March 26, 2025, Heather Buzminsky attested that previously she was employed by the employer as a dispatcher. Ms. Buzminsky's affidavit states that sometime between May 2023 and January 2024, Mr. Erskine was wearing a cam walker boot on his left foot, and that she recalled a conversation with Mr. Erskine in which he reported that he would eventually require surgery for the left foot condition.

Mr. Erskine underwent a CT scan of the left foot on April 9, 2025, revealing healing fractures of metatarsals 2, 3, and 4 with possible acute fracture of the distal third metatarsal of the left foot. In an undated First Report of Injury, Ms. Buzminsky reported that Mr. Erskine "slipped on ice or something," fell into the dumpster and hit his head, and injured his leg. She indicated that Mr. Erskine reported that both feet were fractured and required surgery. Ms. Buzminsky stated that she was not aware of any prior injury to Mr. Erskine's feet, nor did she have knowledge of any preexisting disability.

On September 29, 2025, the Board affirmed the claim administrator's order, which rejected the claim. The Board found that Mr. Erskine failed to establish that he suffered a discrete new injury. Mr. Erskine now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Mr. Erskine argues that the preponderance of the evidence establishes that he sustained an injury in the course of and resulting from his employment when he slipped and fell, hitting his head and injuring his feet while collecting garbage. Further, Mr. Erskine argues that the post-injury CT scan revealed a possible acute fracture of the distal third metatarsal not seen on pre-injury imaging. Mr. Erskine also argues that prior to the injury he had returned to work and was able to complete his job duties and, following this injury, he is unable to perform his job duties and requires surgery. Finally, Mr. Erskine argues that the Board's credibility finding is erroneous. According to Mr. Erskine, he offered an explanation of why one medical record was inconsistent, and he notes that the bulk of the medical evidence of record supports that he fell at work.

Three elements must coexist in workers' compensation cases to establish compensability: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970); *Sansom v. Workers' Comp. Comm'r*, 176 W. Va. 545, 346 S.E.2d 63 (1986).

The Supreme Court of Appeals of West Virginia ("SCAWV") held, in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016):

> A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

*Id.* at 738, 783 S.E.2d at 858, syl. pt. 3.

Here, the Board found that Mr. Erskine failed to establish that he suffered a discrete new injury. The Board noted that pre-injury medical evidence indicates that Mr. Erskine was diagnosed with fractures of the second, third, and fourth metatarsals of the left foot, he received treatment for the fractures, and he was placed on work restrictions. The Board further noted that the December 27, 2024, x-ray of the left foot revealed no definite evidence for acute fracture but there was evidence of varying degrees of fracture and healing of the second through fourth metatarsals. As to Mr. Erskine's credibility, the Board found that Mr. Erskine's testimony was not supported by the medical records. Thus, the Board found that Mr. Erskine's representation that he injured his head and feet while working on December 24, 2024, was not credible.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Erskine failed to establish that he suffered a discrete new injury. As the Board noted, there are extensive recent pre-injury medical records in this case involving injury to and

treatment of the same foot that Mr. Erskine alleges was injured in this claim. Further, as the SCAWV has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996).

We also defer to the Board's credibility findings. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . ."). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's order, which rejected the claim.

Accordingly, we affirm the Board's September 29, 2025, order.

Affirmed.

**ISSUED:** June 2, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White